IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LILLIAN B.,

      Plaintiff,

v.                                         Civ. No. 24-1061 GBW

FRANK BISIGNANO,
*Commissioner of the Social
Security Administration*,

      Defendant.

## ORDER DENYING REMAND

This matter comes before the Court on Plaintiff's Motion to Remand the Social Security Agency ("SSA") decision to deny Plaintiff Social Security Disability Insurance benefits ("SSDI") and Supplemental Security Income ("SSI"). *Doc. 11*. For the reasons explained below, the Court DENIES Plaintiff's motion and AFFIRMS the judgment of the SSA.

### I.    PROCEDURAL HISTORY

Plaintiff filed an initial application for SSDI and SSI on March 31, 2021, alleging disability beginning June 1, 2019. Administrative Record ("AR") at 271–73. She subsequently amended her disability onset date to January 1, 2020. AR at 329. Plaintiff's application was denied on initial review on December 8, 2021, and again on reconsideration on June 1, 2023. AR at 165, 170, 180, 192. On November 2, 2023, a

hearing was held by an Administrative Law Judge ("ALJ").  AR at 46–78.  The ALJ

issued an unfavorable decision on January 24, 2024.  AR at 23–38.  The Appeals Council

denied review on August 21, 2024, making the ALJ's denial the final decision of the

Commissioner.  AR at 1.  On October 18, 2024, Plaintiff filed suit in this Court.  *Doc. 1.*

## II.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the

Commissioner only to determine whether it (1) is supported by "substantial evidence"

and (2) comports with the proper legal standards.  *Casias v. Sec'y of Health & Hum. Servs.*,

933 F.2d 799, 800–01 (10th Cir. 1991).  "In reviewing the ALJ's decision, [the Court]

neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency."

*Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks

omitted).

"Substantial evidence is more than a mere scintilla.  It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."

*Casias*, 933 F.2d at 800 (internal quotation marks omitted).  "The record must

demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to

discuss every piece of evidence."  *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).

"[I]n addition to discussing the evidence supporting his decision, the ALJ also must

discuss the uncontroverted evidence he chooses not to rely upon, as well as

significantly probative evidence he rejects."  *Id.* at 1010.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## III.    ALJ EVALUATION

### A.  Legal Standard

For purposes of both SSDI and SSI, an individual is disabled when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  To determine whether a person satisfies these criteria, the SSA has developed a five-step test.  *See* 20 C.F.R. § 404.1520.[1]  If the Commissioner finds an individual disabled at any step, the next step is not taken.  *Id*. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is

---

[1] Plaintiff has applied for both SSDI and SSI.  The five-step test for determining disability is the same for both types of benefits, although the test is codified in two separate sections of the Code of Federal Regulations.  20 C.F.R § 404.1520 governs SSDI; § 416.920 governs SSI.

expected to last for at least one year; and that either (3) his impairments meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." *Id.* § 404.1520(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") in light of "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he or she] can still do despite [physical and mental] limitations." *Id.* § 404.1545(a)(1). Second, the ALJ determines the physical and mental demands of the claimant's past work. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ determines whether, considering the RFC, the claimant is capable of meeting those demands. *Id.* at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in

the national economy, considering the claimant's RFC, age, education, and work

experience. *Grogan*, 399 F.3d at 1261.

### B. The ALJ's Decision

On January 24, 2024, the ALJ issued a decision denying Plaintiff's application for

SSDI and SSI. *See* AR at 23–38. In denying Plaintiff's application, the ALJ applied the

five-step sequential analysis. At step one, the ALJ found Plaintiff had not engaged in

substantial gainful activity since January 1, 2020, the amended alleged onset date. AR at

29.

At step two, the ALJ found Plaintiff had the following severe impairments: heart

disease, atrial fibrillation with pacemaker, coccyx fracture, degenerative disc disease,

depression, anxiety, inflammatory polyarthropathy, and bilateral degenerative joint

disease of the hips. AR at 29. The ALJ found that Plaintiff's headaches, restless leg

syndrome, hypertension, hyperlipidemia, and hypothyroidism were not severe. AR at

29. He found that Plaintiff's left shoulder pain, bilateral knee pain, hip dysplasia, and

hand symptoms were non-medically determinable impairments. AR at 29.

At step three, the ALJ found that Plaintiff's severe impairments—both

individually and in combination—did not meet or equal the severity of an impairment

in the Listings. AR at 29–31. The ALJ determined that Plaintiff's musculoskeletal

cardiovascular impairments did not meet listing-level severity. AR at 29–30. He

determined that Plaintiff had a mild limitation in understanding, remembering, or

applying information, and moderate limitations in interacting with others;

concentrating, persisting, or maintaining pace; and adapting or managing oneself, but

these limitations did not satisfy the Paragraph B criteria for a finding of disability under

Listings 12.00.  AR at 30–31.

> At step four, the ALJ found Plaintiff had the RFC
>
> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)
> except she can occasionally climb ramps and stairs, balance, stoop, crouch,
> kneel and crawl.  She never [sic] climb ladders, ropes, or scaffolds; she
> cannot be exposed to unprotected heights, hazardous machinery; she can
> have no more than frequent exposure to environment irritants, such as
> fumes, noxious odors, dusts, gases, and poorly ventilated areas.  The
> Claimant can occasionally use bilateral foot controls, but cannot work
> around magnets.  She can perform simple and detailed, but not complex
> tasks and tolerate occasional changes to the work setting.  The Claimant
> maintain [sic] concentration, persistence, and pace for up to and including
> two hours at a time with normal breaks throughout a normal workday.
> She is limited to occasional interaction with coworkers, supervisors, and
> the general public.

AR at 31.  In making this finding he concluded that Plaintiff's medically determinable

impairments could reasonably be expected to cause her alleged symptoms.  AR at 32.

However, Plaintiff's statements about the intensity, persistence, and limiting effects of

her symptoms were not entirely consistent with the medical evidence and other

evidence in the record.  *Id*.  He found largely persuasive the medical opinions of Dr.

Mark Werner, Dr. Mark McGaughey, Dr. Stanley Berman, Dr. Jill Blacharsh, and Dr. Scott Spoor. AR at 34–36. He found the medical opinion of Dr. Richard Sorensen only somewhat persuasive, because the record supported a finding of additional limitations. AR at 34.

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and determined that she could perform jobs that exist in significant numbers in the national economy. *Id*. at 36–37. Specifically, the ALJ found that Plaintiff could perform the requirements of three representative occupations: (1) sorter (DOT 222.687-014); (2) mail clerk (DOT 209.687-026); and (3) folder (DOT 369.687-018). *Id*. at 37. Accordingly, the ALJ concluded that Plaintiff was not disabled from January 1, 2020, through the date of the decision. *Id*.

## IV.    PARTIES' POSITIONS

Plaintiff asserts that the ALJ erred by (1) failing to account for Plaintiff's subjective allegations and other symptoms in determining her RFC, and (2) failing to develop her intellectual impairment. *Doc. 11*. Specifically, as to the first point, Plaintiff asserts the ALJ's RFC determination was not based on substantial evidence because the ALJ failed to assess whether there was objective medical evidence of Plaintiff's symptoms, failed to include the non-severe impairment of headaches in the RFC

without explaining why, and failed to discuss some of the subjective complaints and medical evidence.  *Id*.

Defendant argues that the ALJ's decision should be affirmed because the RFC was supported by substantial evidence and the ALJ had no duty to develop the record. *Doc. 17*.

V.    ANALYSIS

A.    <u>The ALJ adequately considered Plaintiff's symptoms and the medical evidence in determining her RFC.</u>

Plaintiff argues the ALJ's RFC determination was not based on substantial evidence because the ALJ ignored various symptoms and medical evidence, and failed to assess Plaintiff's subjective complaints as required by *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987), and SSR 16-3p, 2017 WL 5180304.

In assessing a claimant's RFC, the ALJ must consider the combined effect of all the claimant's medically determinable impairments.  *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013).  The ALJ is not, however, required to "discuss every piece of evidence." *Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009) (quoting *Frantz v. Astrue*, 509 F.3d 1299, 1303 (10th Cir. 2007)).  The decision is adequate "if it discusses the 'uncontroverted evidence' the ALJ chooses not to rely upon and any 'significantly probative evidence' the ALJ decides to reject."  *Id*. (quoting *Frantz*, 509 F.3d at 1303).

When a claimant alleges disabling pain, the ALJ must consider and determine:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166–67 (10th Cir. 2012) (citing *Luna*, 834 F.2d at 163–64). In evaluating the claimant's symptoms, the ALJ must articulate "specific reasons" that are "closely and affirmatively linked" to evidence in the record and "not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (citations omitted). But the Tenth Circuit has explained that the symptom evaluation "does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

In support of her argument that the RFC was improperly assessed, Plaintiff recites a litany of alleged symptoms and medical evidence that the ALJ "ignored" in his assessment. *Doc. 11* at 12–19. These alleged symptoms include confusion during the hearing, body aches, fatigue, stiff hands, needing reminders to take medicine, needing to put her feet up, having a caregiver, using a cane and a scooter at the store, running out of breath, and calf tightness. *Id.* at 12. Plaintiff also cites two function reports dated

July 14, 2021, and November 7, 2022, and lists numerous symptoms therein that relate

to needing help with personal care; anxiety and migraines; feeling exhausted and

overwhelmed; and experiencing swelling, spasms and locking.  *Id*. at 13.  Plaintiff

describes medical visits and associated findings at Rio Abajo Family practice from 2018

through 2022; Cardiac Care Consultants of New Mexico from 2018 through 2019;

primary care at Bella Vida Healthcare from 2020 through 2022; Duke City Urgent Care

on various occasions from 2019 through 2021; and Paradigm Physical Therapy and

Wellness in 2021; and Lovelace Medical Center for admission on January 8, 2023.[2]  *Id*. at

13–16.

       Plaintiff contends, in somewhat conclusory fashion, that the ALJ "failed to assess

the critical evidence in the record as is listed above," presumably encompassing every

listed report, visit, and symptom.  *Id*. at 16.  More specifically, Plaintiff contends that the

ALJ failed to assess her confusion, pain, fatigue, heart symptoms, fear of Warfarin and

problems with her medicine, multiple hospitalizations, pacemaker, use of a scooter and

wheelchair, and need to elevate her feet.  *Id*. at 18.  Plaintiff does not link these

symptoms to medical opinions or to specific limitations that should have been

incorporated in the RFC.

       As a preliminary matter, the ALJ explicitly discussed most of the listed

---

[2] As Defendant points out, many of these visits took place prior to the alleged disability onset date of
January 1, 2020.

symptoms.  The ALJ discussed Plaintiff's reports that, inter alia, she was unable to lift or

move her right leg; had a caregiver and used a shower chair; had difficulty with

personal care and needed reminders to do her personal care and take medications; had

trouble with "seeing, concentration, memory, and completing tasks"; had a cane; did

not handle stress or changes in routine well; and had trouble "lifting, squatting,

bending, standing, reaching, walking, sitting, kneeling, talking, climbing stairs,

understanding, using her hands, and getting along with others."  AR at 32.  The ALJ

also considered Plaintiff's "reports of dizziness and fatigue."  AR at 35.

> The ALJ assessed Plaintiff's subjective symptoms as follows:

> After careful consideration of the evidence, I find that the Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the Claimant's statements concerning the intensity, persistence, and limiting effects of those symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

AR at 32.  Throughout the decision, the ALJ discussed various medical evidence

showing normal function and unremarkable objective findings.  *E.g.*, AR at 32 ("most of

the notes show that she is alert and fully oriented . . . [and] her higher cognitive

function is intact"); 33 (Plaintiff had "full and painless range of motion in the neck,"

"normal strength and no joint deformity," and "symmetrical deep tendon reflexes,

negative Romberg, normal gait, and intact sensation"); 34 (normal imaging, full

11

function of the left leg, unremarkable physical exam).  The ALJ also evaluated the

agency consultant opinions, in some cases deciding to incorporate greater limitations

than they recommended based on Plaintiff's symptoms and the objective medical

evidence.  *See* AR at 34–36.

While the ALJ could, at times, have been more specific in tying this evidence to

his assessment of Plaintiff's statements, the Court is sufficiently able to follow his

reasoning and to determine that the correct legal standards were applied.  *Zachary*, 695

F.3d at 1166.  Accordingly, any "merely technical omissions . . . do not dictate reversal."

*Id*.  The ALJ also clearly stated that he "considered all symptoms" and "the entire

record" in making the RFC determination, AR at 31, which the Court credits in the

absence of contrary evidence.  *See Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009)

("Where . . . the ALJ indicates he has considered all the evidence our practice is to take

the ALJ 'at [his] word.'").  In sum, the entirety of the ALJ's discussion—including the

explicit discussion of many of the listed symptoms—"demonstrate[s] that he adequately

considered Claimant's alleged impairments."  *Id*.

In her reply brief,[3] Plaintiff draws particular attention to her symptom of right

---

[3] Plaintiff's right shoulder pain was mentioned only once in passing in the motion for remand, *see doc. 11* at 16, without any accompanying argument, while describing her admission to Lovelace Medical Center. Thus, the arguments made in her reply brief with respect to right shoulder pain are likely waived.  *See In re Motor Fuel Temperature Sales Pracs. Litig.*, 872 F.3d 1094, 1112 n.5 (10th Cir. 2017) ("[A]rguments raised for the first time in a reply brief are waived.").  Because the Court finds in any case that the ALJ adequately considered Plaintiff's right shoulder pain, there is no need to determine the effect and extent of the waiver.

shoulder pain, which she alleges was not adequately discussed or incorporated by the

ALJ. *Doc. 20* at 2–4. She states this is "harmful because [Plaintiff] . . . alleged reaching

difficulties." *Doc. 20* at 3. The record shows that on April 8, 2023, Plaintiff was

admitted to Lovelace Medical Center with complaints of left thigh and hip pain. AR at

933. During her admission, Plaintiff complained of right shoulder pain and received a

CT scan with contrast of the right shoulder, which revealed "[n]o evidence of acute

fracture, dislocation, or discrete inflammatory change at the right shoulder." AR at 941.

Plaintiff generally alleges that "most of her pain was in the right shoulder" (as

compared with her left shoulder, which the ALJ addressed at step two), and cites to

numerous pages in the record. *Doc. 20* at 2–3. One of these pages is from Plaintiff's

function report dated July 14, 2021, and does not mention the right shoulder. *See* AR at

357. The rest are from Plaintiff's April 2023 inpatient treatment at Lovelace Medical

Center and reflect symptoms of acute right shoulder pain. AR at 957, 1161, 1174, 1206,

1213. There is no indication of ongoing pain or follow-up treatment for her right

shoulder, nor does Plaintiff cite evidence that would support a reaching limitation

based on the right shoulder pain she experienced during her April 2023 hospital

admission. Moreover, although the ALJ did not explicitly mention Plaintiff's right

shoulder pain, he discussed her April 2023 admission to Lovelace Medical Center,

referenced the specific page containing the CT results of her right shoulder, and stated

that "imaging was largely normal except for left hip effusion."  AR at 34.  The record

therefore reflects adequate consideration of Plaintiff's right shoulder pain.[4]

Plaintiff also draws particular attention to her headaches, which the ALJ  found

at step two were a medically determinable, but not severe, impairment.  AR at 29.

Plaintiff argues that the ALJ improperly failed to consider them again at step four.  *Doc.*

*11* at 16.  Plaintiff cites no medical opinions or other evidence suggesting a functional

limitation imposed by her headaches.  It is certainly true that "in determining RFC, an

ALJ 'must consider the limiting effects of all the claimant's impairments, even those that

are not severe.'"  *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010) (quoting 20 C.F.R.

§§ 404.1545(e), 416.945(e)).  However, the ALJ stated that he "considered all of the

Claimant's medically determinable impairments, including those that are not severe,

when assessing the Claimant's residual functional capacity."  AR at 29.  Because

Plaintiff's headaches were discussed at step two, and the ALJ stated that all

impairments were considered at step four, reversal is not warranted.  *See Bradley v.*

---

[4] The Court also notes that the ALJ was not required to discuss "every piece of evidence," *Clifton*, 79 F.3d at 1009–10, and Plaintiff has not demonstrated that the episode of acute shoulder pain she experienced while at Lovelace Medical Center was "significantly probative evidence," *Wall*, 561 F.3d at 1067 (quoting *Frantz*, 509 F.3d at 1303).  "Significantly probative evidence includes, for example, valid results from generally accepted tests that would support a finding of disability; a statement from a medical provider that relates to the severity of a claimant's impairments or their impact on her ability to function; a statement from a consulting mental-health professional concerning a claimant's mental impairments and restrictions; or an RFC assessment explaining the claimant's [limitations]."  *Galloway v. Comm'r*, 2024 U.S. App. LEXIS 8477, at *7 (10th Cir. Apr. 9, 2024) (citations omitted).  It is doubtful that the singular cited episode of acute pain, without more, meets this definition.

*Colvin*, 643 F. App'x 674, 676 (10th Cir. 2016) (finding that because the ALJ considered

the claimant's hand impairments at step two and took into account "all symptoms"

when determining the RFC, "the ALJ's failure to specifically discuss them at the fourth

step does not require reversal"); *see also Wall*, 561 F.3d at 1070 (10th Cir. 2009) ("Where .

. . the ALJ indicates he has considered all the evidence our practice is to take the ALJ 'at

[his] word.'").

 For these reasons, the Court finds the ALJ adequately considered the symptoms

listed in Plaintiff's brief. Though not technically perfect, *see Zachary*, 695 F.3d at 1166,

the ALJ's decision contains a proper analysis of Plaintiff's symptoms and a reasoned

explanation for discrediting some of Plaintiff's subjective complaints. Notably, the ALJ

adopted all limitations suggested by the consulting medical experts, as well as some

additional limitations based on Plaintiff's subjective symptoms. *See Wall*, 561 F.3d at

1068–69 (holding that where no treating or examining physician indicates the claimant

is totally disabled, "the need for express analysis is weakened"). The Court therefore

finds, contrary to Plaintiff's argument, that the ALJ's decision was supported by "such

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion," *Casias*, 933 F.2d at 800, and should be affirmed.

 **B. The ALJ was not required to develop Plaintiff's alleged intellectual
 impairment.**

 Plaintiff asserts that based on hearing testimony, function reports, and medical

records, the ALJ should have been alerted to her "intellectual impairment." *Doc. 11* at 20. She admits that neither Plaintiff nor her attorney raised the issue before the ALJ. *Id*. She does not claim that she was ever diagnosed with an intellectual disability, or that any consulting expert recommended limitations based on her intellectual impairment.

"[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997). Plaintiff was represented at her hearing, and there was nothing in the record to alert the ALJ to a need for further development of her alleged intellectual impairment. Plaintiff was evaluated by three psychological consultants, none of whom identified a need for greater RFC limitations based on her alleged intellectual impairment. She does not allege a history of intellectual disability, a diagnosis of such disability, or a medical opinion of limited functioning due to intellectual impairment

Further development of the record may be required "where there is a direct conflict in the medical evidence requiring resolution . . . or where the medical evidence in the record is inconclusive." *Hawkins*, 113 F.3d at 1166. In this case, those circumstances were simply not present. Plaintiff's alleged intellectual impairment was not raised by her counsel, was not identified by medical providers, and was not

otherwise so obvious on the record that further development was required.  As for

Plaintiff's request that this Court listen to the audio recording of the hearing, this is

likely impermissible, *see Atteberry v. Finch*, 424 F.2d 36, 39 (10th Cir. 1970) ("Court

review of the Secretary's denial of Social Security disability benefits is limited to a

consideration of the pleadings and the transcript filed by the Secretary as required by 42

U.S.C. § 405(g)."), and would certainly be pointless.  The Court cannot substitute its

judgment about Plaintiff's intellectual ability for that of the agency, or for, that matter,

those of Plaintiff's treating providers.  *See Bowman*, 511 F.3d at 1272.  The Court

therefore declines to find error on the basis of the ALJ's failure to develop Plaintiff's

alleged impairment.

## VI.    CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion to Reverse and

Remand (*doc. 11*) and AFFIRMS the Commissioner's decision.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**